UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| DENUKE CONTRACTING SERVICES, INC., | ) | |
|---|---|---|
| TRU SOLUTIONS OF TENNESSEE, LLC and | ) | |
| MCE APPLIED TECHNOLOGY, INC. d/b/a | ) | |
| TPG APPLIED TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:07-CV-114 |
| | ) | (VARLAN/GUYTON) |
| ENERGX, LLC and FOSTER WHEELER | ) | |
| ENVIRONMENTAL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil action is before the Court on defendant EnergX, LLC's ("EnergX") Motion to Dismiss [Doc. 8]. Plaintiffs have responded in opposition to defendant's motion [Doc. 15] and defendant EnergX has filed a reply [Doc. 16]. Thus, the motion is now ripe for determination.

The Court has carefully reviewed the pending motion and responsive pleadings in light of the applicable law. For the reasons set forth herein, defendant's motion will be denied.

**I.     Relevant Facts**

As the Court is required to do on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court will construe the complaint [Doc. 1] in the light most favorable to the plaintiffs, accept all well-pleaded factual allegations as true, and determine whether plaintiffs can prove

no set of facts in support of their claims that would entitle them to relief. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003).

In 1998, the Department of Energy ("DOE") initiated the TRU/Alpha Low Level Waste Treatment Project ("TRU Project") to gather, process, and prepare for disposal of certain transuranic waste generated from various sources. [Doc. 1 at ¶ 8.] The DOE awarded the TRU Project to one of the defendants, Foster Wheeler Environmental Corporation ("FWEC"), on August 20, 1998. [*Id.* at ¶ 10.] FWEC subcontracted staffing of portions of the TRU Project to plaintiffs, DeNuke Contracting Services, Inc. ("DeNuke"), TPG Applied Technology, Inc. ("TPG"), and TRU Solutions of Tennessee, LLC ("TRU Solutions") (hereinafter collectively referred to as "the Plaintiffs"). [*Id.* at ¶¶ 12-14.] Under these contracts, FWEC would pay agreed-upon pricing to the Plaintiffs for staff, and the Plaintiffs would then pay the employees' wages and provide other employee benefits. [*Id.* at ¶ 16.] In 2003, FWEC hired defendant, EnergX, as a subcontractor on the TRU Project to provide general management of the project and overall business systems implementation. [*Id.* at ¶ 18.] EnergX's President and Chief Executive Officer is Anthony Buhl ("Buhl"). [*Id.* at ¶ 4.] In the August of 2005, FWEC hired Buhl as Vice President of FWEC and General Manager of the TRU Project. [*Id.* at ¶ 23.] After his appointment by FWEC, Buhl continued to act as owner of EnergX. [*Id.* at ¶ 24.]

In late 2005 or early 2006, EnergX submitted a contracting plan to the DOE proposing displacement of several TRU Project subcontractors claiming the plan would cause the TRU Project to operate more efficiently and cost effectively. [*Id.* at ¶ 25.] After DeNuke

learned of the potential reduction of subcontractors on the TRU Project, Plaintiffs claim that DeNuke submitted a "Staffing Order" proposing consolidation of subcontractors under Denuke's management in order to eliminate the need to reduce the number of subcontractors. Plaintiffs allege that EnergX never responded to DeNuke's proposal. [*Id.* at ¶ 27.] Plaintiffs also claim that EnergX gave letters to nine DeNuke contract employees giving them 24 hours to accept job offers with EnergX or else be no longer allowed to work on the TRU Project [*Id.* at 30.] Six of nine DeNuke employees accepted the offer. Similar letters were given to TRU Solutions and TPG employees, of which three employees from each subcontractor accepted. [*Id.*] Plaintiffs also claim that Buhl told DeNuke that the DOE Contracts manager, Mark Million ("Million"), had directed EnergX to reduce the number of subcontractors on the TRU Project. [*Id.* at ¶ 31.] Upon calling Million's office, Plaintiffs claim that Connie Bayless, the DOE contract specialist and temporary substitute for Million, denied approving Buhl's contracting plan to reduce the number of subcontractors on the TRU Project. [*Id.* at ¶ 32.] In April of 2006, FWEC officially terminated all of its agreements for subcontracting with the Plaintiffs. [*Id.* at ¶ 33.]

Due to EnergX's actions, the Plaintiffs allege tortious interference with the FWEC contracts and tortious interference with the Plaintiffs' business and business relations. [*Id.* at ¶¶ 38-46.] The Plaintiffs claim lost profits for the remainder of the TRU Project as well as losses from expected contract extensions through 2013. [*Id.* at ¶ 34.] Additionally, Plaintiffs claim damages to their reputations in the nuclear industry that adversely affect their ability to generate goodwill and more business. [*Id.* at ¶ 37.]

3

## II. Analysis

### A. Standard of Review

EnergX has moved to dismiss the Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski*, 319 F.3d at 855. While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Sixth Circuit has made it clear that despite the liberal system of notice pleading, conclusory allegations are not enough to survive Rule 12(b)(6) dismissal. *See MacDermid v. Discover Fin. Servs,* 488 F.3d 721, 733 (6th Cir. 2007). The issue is not whether the plaintiff will prevail, but whether the claimant is entitled to offer evidence to support his or her claim. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

B. <u>Tortious Interference with Contract</u>

Under Tennessee law, there is a common law action as well as a statutory cause of action for the unlawful inducement of a breach of contract. *See Polk and Sullivan, Inc., v. United Cities Gas Co.*, 783 S.W.2d 538, 542 (Tenn. 1990). The seven elements for common law "interference in the performance or procurement of the breach of contract" are: (1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and (7) there must have been damages resulting from the breach of the contract. *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999).

Additionally, Tennessee statute codifies a cause of action for the "Inducement of breach of contract." Tenn. Code Ann. § 47-50-109 (2007). The statute provides, "It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto." *Id.* Notably, the statute "is but a statutory declaration of the common law tort action, expressly substituting treble damages for punitive damages." *Polk and Sullivan, Inc.,* 783 S.W.2d at 542.

In support of its motion to dismiss, EnergX argues that the Plaintiffs' claims for tortious interference with contract must fail because the Plaintiffs did not allege and cannot prove that FWEC breached its contracts with the Plaintiffs, the fifth element. [Doc. 9 at 4.]

5

First, EnergX argues that Plaintiffs did not allege a breach of contract by FWEC and merely claims contract termination. [*Id.*] Thus, EnergX argues that the Plaintiffs have failed to plead an essential element of the claim. Second, EnergX argues that there can be no proof of breach of contract in this case because the contract with FWEC was terminable at will. [*Id.*]

In response, Plaintiffs first contend that FWEC breached the contracts' implied duty of good faith and fair dealing. [Doc. 15 at 17.] In *Envoy Corp. v. Quintiles Transnat'l Corp.*, the district court directly addressed this argument. It held that "absent a valid claim for breach of contract, there is no cause of action for breach of an implied covenant of good faith and fair dealing." *Envoy Corp. v. Quintiles Transnat'l Corp.*, No. 3:03cv0539, 2007 WL 2173365, at *8 (M.D. Tenn. July 26, 2007).[1] In other words, these claims are "part and parcel" of the breach of contract claim. *Id.* (citations omitted). Thus, the Plaintiffs cannot solely rely on the breach of the implied covenant of good faith and fair dealing to overcome EnergX's argument regarding the plaintiffs' failure to plead a breach of contract.

Second, the Plaintiffs argue that their allegations regarding EnergX's improper inducement of FWEC terminating their contracts are sufficient for the breach of contract element. [Doc. 15 at 17.] They further argue that EnergX misinterprets the cases cited to support its contention that there can be no breach of contracts terminable at will. In regards to the protection of contracts terminable at will, the Supreme Court of Tennessee has adopted

---

[1] Notably, the district court interpreted North Carolina contract law in *Envoy Corporation*. Nevertheless, the principles and reasoning discussed greatly discount the Plaintiffs' arguments claiming a breach of the implied covenant of good faith and fair dealing.

6

the Restatement approach. *Polk and Sullivan, Inc.*, 783 S.W.2d at 543. While the Restatement does state that "[o]ne who intentionally causes a third person . . . not to continue an existing contract terminable at will does not interfere improperly with the other's relation," it goes on to limit the scope of this statement with a four-part test. *Id.* (quoting Restatement (Second) Torts § 768(1) (1979)). Under this test, there is no improper interference if: "(a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other." *Id.* The Plaintiffs' complaint alleges sufficient facts about EnergX employing "wrongful means" to overcome the no improper interference test. Such facts include intimidating the Plaintiffs' employees and misrepresenting statements about the DOE's approval of a plan reducing the number of subcontractors. [Doc. 1 at ¶¶ 30, 31-32].

Furthermore, the Tennessee Appellate Court has expressly held that "although the contract was terminable at will, an action can still be maintained for procurement of the breach of the contract." *New Life Corp. of Am., v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926-27 (Tenn. App. 1996). Similarly, the mere fact that the contracts at issue were terminable at will should not require dismissal in the present case.

The Restatement (Second) of Torts also runs counter to EnergX's argument that contracts terminable at will fall outside the scope of a tortious interference with contracts action. The Restatement states that "[u]ntil [the third person] has so terminated [the

agreement at will], the contract is valid and subsisting, and the defendant may not improperly interfere with it." Restatement (Second) of Torts § 766 cmt g (1979). Though the Restatement is merely persuasive authority, it provides additional insight and guidance as to this issue, particularly in light of the Supreme Court of Tennessee's previous reliance on the Restatement (Second) of Torts in defining this area of the law. *See Polk and Sullivan, Inc.*, 783 S.W.2d at 543. Thus, review of relevant case law and other persuasive authority leads this Court to deny EnergX's motion to dismiss the Plaintiffs' tortious interference with contract claim.

    C.    <u>Tortious Interference with Business Relations</u>

The Supreme Court of Tennessee has expressly adopted the tort of intentional interference with business relationships. *Trau-Med of Am., Inc., v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). The elements for this common law cause of action are: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from tortious interference. *Id.* In the present cause of action, EnergX argues for dismissal due to the Plaintiffs' inability to prove four of these essential elements.

First, EnergX argues that the Plaintiffs have failed to allege an existing business relationship with specific third parties or a prospective relationship with an identifiable class

8

of third persons. [Doc. 9 at 6.] Plaintiffs respond that their existing business relationship as well as their prospective relationships with FWEC are sufficiently alleged in their complaint. [Doc. 15 at 7-9.] The Supreme Court of Tennessee clarified this issue in its adoption of the Restatement (Second) of Torts approach. *Trau-Med of Am., Inc.*, 71 S.W.3d at 701 n.4. (discussing the type of relations protected against intentional interference with prospective contractual relations). The Restatement (Second) of Torts states that "a contract terminable at will is closely analogous to the relationship covered by this Section." Restatement (Second) of Torts § 766B. Thus, despite the similarities, the Restatement (Second) of Torts distinguishes between relationships based on at will contracts, § 766, and those that fall within the scope of § 766B. Accordingly, claims arising from terminable at will contracts are those of tortious interference with contracts, not tortious interference with business relations.

However, the Plaintiffs also allege an expectation of a continuing or prospective relationship with FWEC. [Doc. 1 at ¶ 34.] In its adoption of the Restatement (Second) of Torts approach, the Supreme Court of Tennessee recognized that "[i]nterference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included." *Trau-Med of Am., Inc.*, 71 S.W.3d at 701 n.4. In their complaint, the Plaintiffs allege that EnergX's interference prevented FWEC from extending its contracts with the Plaintiffs. [Doc. 1 at ¶ 34.] Thus, dismissal of this claim for failure to allege the first element is inappropriate.

9

Second, EnergX argues that the Plaintiffs failed to allege that EnergX had knowledge of the Plaintiffs' business dealings with others. [Doc. 9 at 7.] In the complaint, Plaintiffs allege that EnergX had knowledge of the relationship with FWEC through its role as the general management subcontractor on the TRU Project, conversations with the Plaintiffs about the TRU Project, and its intimidation and hiring of the Plaintiffs' employees. [Doc. 1 at ¶¶ 18, 23, 25-31.] The facts allege more than EnergX's mere awareness of the Plaintiffs' business dealings with FWEC. Such allegations of EnergX's involvement and actions in the TRU Project necessitate an inference of knowledge by EnergX of the business relationships between the Plaintiffs and FWEC.

Third, EnergX argues that the Plaintiffs fail to allege facts showing an improper motive or improper means. [Doc. 9 at 7.] For improper motive, the Plaintiffs must "demonstrate that the defendant's predominant purpose was to injure the plaintiff." *Trau-Med of Am., Inc.*, 71 S.W.3d at 701 n.5. As for improper means, the Supreme Court of Tennessee provides examples of improper interference. *Id.* (including threats or intimidation, misrepresentation or deceit, undue influence, and "those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct"). The Plaintiffs' complaint includes allegations of EnergX intimidating employees with threats of termination and alleged misrepresentation by Buhl of Million's approval of reducing the number of subcontractors on the TRU Project. [Doc. 1 at ¶¶ 30, 31-33.] *Compare Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006) (holding insufficient allegations for "improper means" when the complaint merely implied

a "threat" that was never "actually voiced"). While EnergX is correct that Plaintiffs have not alleged that EnergX's predominant purpose was to injure them, the Plaintiffs do allege facts sufficient for improper means.

Fourth, EnergX argues that the Plaintiffs did not set forth facts supporting their claim for damages. [Doc. 9 at 7-8.] This argument relies solely on the fact that FWEC did not breach its contracts with the Plaintiffs. However, as discussed above, the Plaintiffs sufficiently claim interference as to the extension of their contracts with FWEC and resulting damages. [Doc. 1 at ¶¶ 34-36]. Thus, EnergX's argument fails as to the fifth element of the Plaintiffs' tortious interference with business relations claim. As the Plaintiffs' complaint sufficiently alleges facts to satisfy the essential elements for tortious interference with business relations, EnergX's motion to dismiss must be denied as to this count of the complaint.

## III. Conclusion

For the reasons set forth herein, EnergX's motion to dismiss [Doc. 8] will be **DENIED** as to Plaintiffs' tortious interference with contract claim and as to Plaintiffs' tortious interference with business relations claim.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE